The case, as settled and transmitted with the record, is substantially as follows:
In his answer, the defendant pleaded that he had a license from plaintiffs to enter. He also set up title in one Lewis Johnson, his father, alleging that the said Lewis was a tenant in common with the plaintiffs, and that he entered into possession of the land described in the plaintiffs' complaint, with the full knowledge and consent of all the parties concerned.
The plaintiffs denied that they ever gave the defendant a license to the premises; also denied the tenancy in common, and claimed to be the owners of said land in severalty.
It appeared in evidence, that Samuel Johnson, the ancestor of Lewis Johnson and of the plaintiffs, died about the year 1834, leaving him surviving nine children, of whom said Lewis Johnson and John S. Johnson, under whom the plaintiffs claim, were two, and that in the year 1845 the other heirs of the said Samuel Johnson, deceased, released by deed to Lewis Johnson and to John S. Johnson.
Plaintiffs offered evidence tending to show that in the lifetime of the ancestor, Samuel Johnson, said land was divided by a line through the middle, and that Lewis Johnson and John S. Johnson, the father and husband of plaintiffs, occupied the land on opposite sides of said line, after the death of the said Samuel, and claimed on each side of said line adversely — the land in controversy being on the plaintiffs' side. Plaintiffs introduced further evidence showing that from the death of the said Samuel Johnson up to the commencement of (403) this action, that they and John S. Johnson, under whom they claimed, and Lewis Johnson recognized this dividing line between them as being the true dividing line. Plaintiffs also offered as evidence, separate deeds of trusts executed by John S. Johnson and Lewis Johnson respectively, in the year 1852, whereby it appeared that each of them conveyed their separate tracts, recognizing the said division line; and for the purpose of further establishing said dividing line, the plaintiffs offered evidence tending to show that Lewis Johnson and John S. Johnson, both made deeds of conveyance once, to a part of the land occupied by them separately.
The defendant objected to the evidence of the sale of the lands by the said John S. and Lewis Johnson, unless the deeds were exhibited, which were not, except the record showing that the deeds of trust above alluded to were made. Defendant proved upon the cross-examination *Page 320 
of one of the plaintiffs' witnesses, that he, the witness, purchased a part of the land occupied by Lewis Johnson, at or near the dividing line, from said Lewis, who offered to make to him his separate deed for the same, but that he refused to accept such deed until John S. Johnson would join Lewis in the conveyance, which the said John S. did. Defendant introduced testimony also to prove that no such line was established. One of his witnesses testifying that he was little more than forty years of age, and that he never heard of any dividing line, but that when he was a boy there was a fence where the plaintiffs claim that a line was.
Defendant asked his Honor to charge the jury that the plaintiffs had no right to set up adverse possession, except from the date of the release in 1845; and also asked his Honor to instruct the jury, in computing the time of the adverse possession, that the time from 20th May, 1861, to January 1st, 1870, must be deducted.
His Honor, in reply, told the jury that if the plaintiffs had (404) occupied the land in controversy, for thirty or thirty-five years, claiming adversely that in law the dividing line was established; and if they were satisfied that the defendant entered the land of the plaintiffs without a license, that the plaintiff would be entitled to recover. His Honor also remarked to the jury, "I shall hold that the plaintiffs are justifiable in bringing this action."
There was a verdict for the plaintiffs. Motion for a new trial made and refused. Judgment and appeal by defendant.
In this action questions of title and boundary to land arose upon the trial.
There was conflicting evidence, and at the conclusion of his Honor's charge to the jury he remarked, "I shall hold that the plaintiffs are justifiable in bringing this action."
We cannot see, from the record that this remark had any proper connection with the case; and we are at a loss to understand what bearing his Honor intended it to have upon the jury.
We think it possible — yes, highly probable — that the jury understood his Honor to intimate that the plaintiff had a good cause of action, and that the evidence would warrant, or in his language, justify them in returning a verdict for the plaintiff.
There must be a venire de novo. Let this be certified.
PER CURIAM. Venire de novo. *Page 321 
 Cited: Wilson v. Charlotte, 74 N.C. 760; Tucker v. Raleigh, 75 N.C. 271;Wallace v. Trustees, 84 N.C. 166; Green v. Kitchin, 229 N.C. 461.
(405)